# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# ORANGEBURG DIVISION

| | | |
|---|---|---|
| United States of America | ) | Criminal No. 5:14-cr-00809-JMC-1 |
| | ) | |
| v. | ) | |
| | ) | **ORDER AND OPINION** |
| | ) | |
| Joel Perrin Robinson | ) | |
| _____ | ) | |

This matter is before the court on Defendant Joel Perrin Robinson's ("Defendant") Motion for Review and Appeal of Detention Order (ECF No. 40), requesting review of the detention order entered by United States Magistrate Judge Paige J. Gossett on October 28, 2014 (ECF No. 18). The court granted Defendant's Motion for Review and heard argument and received evidence from Defendant and the United States of America (the "Government") at a hearing on December 18, 2014. (See ECF Nos. 79, 80.) Upon de novo review of all the evidence and upon consideration of the parties' arguments, the court **DENIES** Defendant's appeal of the order of detention issued by Magistrate Judge Gossett.

In support of this conclusion, the court makes the following Findings of Fact and Conclusions of Law:

## I. FINDINGS OF FACT

1. The Government presented testimony from Drug Enforcement Administration ("DEA") Special Agent Frank Hidalgo ("Hidalgo") regarding its investigation of Defendant. Hidalgo testified that DEA became aware of Defendant pursuant to information provided by Adrian Banks ("Banks"), an individual who was discovered after he was injured in a fire that occurred at a house being used as a site for manufacturing phencyclidine ("PCP").

2. Based on information provided by Banks, DEA procured a search warrant for the

1

home and property where Defendant lived in Orangeburg, South Carolina. Specifically, on October 19, 2014, Magistrate Judge Gossett approved a search warrant to search Defendant's home at 131 Snapover Lane, Orangeburg, South Carolina for evidence of drug trafficking. (ECF No. 1-1 at 3 ¶ 6 (referencing ECF No. 1-2).)

3. Hidalgo testified that Banks warned DEA that extreme caution should be used with Defendant because he always carried a gun. As a result, Hidalgo testified that DEA chose not to approach Defendant in a public place, but determined that the best option to serve the search warrant was at Defendant's residence because it was isolated and there was not any danger to the general public.

4. DEA chose the early morning of October 20, 2014, to execute the search warrant at Defendant's home. (ECF No. 1-1 at 4 ¶ 7.) Hidalgo testified that in the approach to the house, DEA loudly knocked down a wrought iron gate with a heavy duty sports utility vehicle and pacified several dogs with a fire extinguisher. Hidalgo further testified that once agents were in place, a signal was given and agents proceeded to breach the front door and break the glass of a window near Defendant's bedroom. While this was ongoing, agents attempted to announce their presence, as they are required to do, by yelling "police," "DEA," or "search warrant" and by turning on the sirens and flashing lights of their vehicles. Agents also were wearing police gear with "Police" or "DEA" on it, which was easily visible because the lighting conditions were not that bad according to Hidalgo.

5. Hidalgo testified that the breach of the front door set off the home's burglar alarm. Soon thereafter, Hidalgo testified that he heard gunshots and he learned that DEA Special Agent Barry Wilson had suffered a gunshot wound. Hidalgo testified that after Wilson was shot, agents in the immediate area again announced themselves as police, which resulted in Defendant

dropping his gun and surrendering. Defendant was then arrested and taken into custody. (ECF No. 3.)

6. In response to the numerous shots fired by Defendant, DEA agents did not return fire. (E.g., ECF No. 1-1 at 4 ¶¶ 8–9.)

7. Hidalgo testified that upon search of the home and surrounding premises, DEA discovered numerous guns, ammunition, a bulletproof vest, cleaning fluid, cash, a small amount of marijuana, and a packing slip for five metal drums of Piperidine.

8. On October 27, 2014, Magistrate Judge Gossett conducted a detention hearing wherein she determined on October 28, 2014, that (1) there was probable cause to believe that Defendant committed "an offense under 18 U.S.C. § 924(c)," and (2) Defendant did not rebut the presumption that no condition will reasonably assure his appearance and the safety of the community. (ECF Nos. 17, 18.) At the time of the October 27, 2014 detention hearing, Defendant only had pending against him charges in a Criminal Complaint for (1) assault on a federal law enforcement officer in violation of 18 U.S.C. § 111 and (2) using or carrying a firearm during a crime of violence or drug trafficking crime in violation of 18 U.S.C. § 924(c). (See ECF No. 1.)

9. On November 11, 2014, Defendant filed his Motion for Review and Appeal of Detention Order. (ECF No. 40.)

10. On November 20, 2014, the Grand Jury named Defendant as the sole individual in a four-count Indictment. (See ECF No. 45.) "Count One" charges Defendant with conspiracy to (1) knowingly and intentionally manufacture and possess with intent to distribute at least one kilogram of a mixture and substance containing a detectable amount of PCP, (2) knowingly and intentionally possess 1-Piperidinocyclohexanecarbonitrile ("PCC"), a controlled substance, with intent to manufacture PCP, and (3) knowingly and intentionally possess Piperidine, a chemical,

and having reasonable cause to believe the chemical would be used to manufacture PCP in violation of 21 U.S.C. §§ 841(a)(1) and 841(c)(2). (Id. at 2-3.) "Count Two" charges Defendant with maintaining drug involved premises in violation of 21 U.S.C. §§ 856(a)(2), 856(b)–(e) and 18 U.S.C. § 2. (Id. at 6.) "Count Three" charges Defendant with assaulting individuals executing a search warrant using a deadly and dangerous weapon in violation of 18 U.S.C. § 2231(a)–(b). (Id. at 7.) "Count Four" charges Defendant with possession of a firearm in furtherance, and use of a firearm during and in relation to, a drug trafficking crime and crime of violence in violation of 18 U.S.C. § 924(c)(1)(A)(i)–(iii). (Id. at 7-8.)

11.     Defendant is thirty-two years old and was born, raised, and continues to reside in Orangeburg County, South Carolina. (ECF No. 19 at 1.)

12.     Defendant does not have any prior criminal history. (ECF No. 19 at 4.)

13.     Defendant possesses a United States passport and last traveled outside the United States in 2013. (Id. at 1.)

14.     Defendant has a concealed weapon permit to carry a gun. (Def.'s Hr'g Ex. No. 6 at 6.) Patricia Monique Hampton ("Hampton"), mother of two of Defendant's children, testified that he keeps his guns locked up in a gun safe.

15.     Defendant has a high school diploma from Bowman High School in Bowman, South Carolina, a certificate in Automotive Technology from Orangeburg-Calhoun Technical College in Orangeburg, South Carolina, and a Bachelor's Degree in Business Management from Voorhees College in Denmark, South Carolina. (ECF No. 19 at 2.)

16.     Defendant's father, Dr. James C. Robinson, is a retired professor at South Carolina State University. (Id. at 1.) Defendant's mother, Priscilla Glover Robinson, is a retired principal and currently owns/operates Orangeburg Collision and Repair Center ("Orangeburg

4

Collision"), an auto body shop in Orangeburg, South Carolina. (Id.) Defendant has two siblings, a brother (Jamal Robinson) and sister (Jade Robinson), who also reside in Orangeburg, South Carolina. (Id.)

17.     Defendant is single, having never been married, and is the father of three children. (Id. at 2.) Two of Defendant's children reside in Orangeburg, South Carolina. (Id.) Hampton testified that she co-parents Defendant's three children with him and that he is very involved in his children's lives both personally and financially.

18.     Prior to his arrest, Defendant was employed by his mother at Orangeburg Collision. (ECF No. 19 at 1.) Defendant's mother testified that he earned approximately $30,000 to $40,000 a year at Orangeburg Collision.

19.     After his arrest, Defendant communicated to law enforcement agents that he was awakened on the morning of October 20, 2014 by the sound of a window in his bedroom breaking and then the wail of his home security alarm. (Def.'s Hr'g Ex. No. 6 at 2.) Fearing for his life, Defendant fired his gun two or three times toward where he heard the window break. (Id.) Defendant then proceeded out of his bedroom through double doors to his pool area where he fired several shots at an individual, who appeared to Defendant to be ducking. (Id. at 3) Immediately thereafter, Defendant heard "Police" and dropped his gun and threw up his hands. (Id. at 3–4.)

20.     At the December 18, 2014 hearing, Curtis Sheppard ("Sheppard"), Defendant's neighbor, testified that he did hear Defendant's burglar alarm on October 20, 2014. Sheppard further testified that he did not hear the police announce themselves or any sirens, or see any flashing vehicle lights.

21.     Defendant also presented testimony from his mother, father, sister, Hampton, a

5

former girlfriend (Jonovea Butler), and a pastor local to the Orangeburg area (Reverend Jerome Anderson).

22.     Defendant's mother, father, sister, Hampton, Butler, Sheppard, and Anderson all testified that Defendant was not a danger or physical threat to anyone in the community and they were unaware of any reason why he would fail to appear in court as required while out on bond.

Based on the foregoing Findings of Fact, the court hereby enters the following:

## II.     CONCLUSIONS OF LAW

1.     "When the district court acts on a motion to revoke or amend a magistrate judge's pretrial detention order, the district court acts de novo and must make an independent determination of the proper pretrial detention or conditions of release."  United States v. Covington, 2014 WL 504880, at *3 (S.D. W.Va. Feb. 7, 2014) (slip copy) (quoting United States v. Stewart, 19 F. App'x 46, 48 (4th Cir. 2001) (per curium) (unpublished)).

2.     A grand jury indictment is affirmative evidence of probable cause for the prosecution.  See, e.g., United States v. Soriano–Jarquin, 492 F.3d 495, 502 (4th Cir. 2007) (noting probable cause may be satisfied by a grand jury indictment).  Defendant does not dispute that the Grand Jury had probable cause for the Indictment.

3.     A defendant must be detained pending trial if, after a hearing, the court finds "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community."  18 U.S.C. § 3142(e)(1).  It shall be presumed that no condition or combination of conditions exists to reasonably assure the appearance of the defendant or the safety or the community if there is probable cause to believe the defendant committed "an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. [§] 801 et seq.)" or "an offense

under section 924(c)" of Title 18.  18 U.S.C. § 3142(e)(3)(A)–(B).  As such, a rebuttable presumption of pretrial detention applies to Defendant.

4.   "[T]he defendant bears the burden of producing probative, credible evidence to rebut the presumption and support his contention that he will appear in federal court when required and that he does not pose a danger to the safety of the community."  United States v. Tyson, 2011 WL 4443253, at *1 (E.D.N.C. Sept. 23, 2011).  Although the defendant has the burden of production to rebut the presumption, the government retains the burden of persuasion.  Id.

5.   Here, Defendant has shown sufficient evidence to rebut the presumption of detention.  Defendant has no criminal history, has steady employment, and offered multiple witnesses who stated they had no knowledge that Defendant has ever been violent or sold drugs.  In addition, Defendant has an active role in his children's lives, which includes taking care of them multiple times a week, and multiple witnesses stated he would not leave his children to flee from the charges.  Further, witnesses stated that Defendant desires to go to trial to fight the charges, and thus would not fail to appear for the proceedings.  Defendant's burden of production does not require that he produce clear and convincing evidence that he is not dangerous or likely to flee, he is only required to produce some evidence supporting those factors.  United States v. Guy, 2013 WL 121807, at *3 (E.D.N.C. Jan. 9, 2013).  The court finds Defendant has done so in this case.

6.   "Upon the defendant's introduction of evidence in support of his release, the statutory presumption in favor of detention does not vanish, but retains evidentiary weight and remains as one factor to be considered."  Id.  "The Court may take into consideration the legislative finding by Congress that persons who commit drug-trafficking offenses pose a special

risk of flight and a special danger to the safety of the community." Id. (citing United States v. Hare, 873 F.2d 796, 798–99 (5th Cir.1989)).

7. Since Defendant successfully rebutted the presumption for detention (or that such presumption did not apply in the first place), the question becomes whether the Government has proved that no condition or combination of conditions would reasonably assure the appearance of Defendant as required or the safety of any other person or the community. The court then evaluates the record pursuant to the factors set forth in 18 U.S.C. § 3142(g).

8. When considering a defendant's suitability for bond, the court must consider the following factors: (1) the nature and circumstances of the offense charged, (2) the weight of the evidence against the defendant, (3) the history and characteristics of the defendant, and (4) the nature and seriousness of the danger to the community or an individual if the defendant is released on bond. 18 U.S.C. § 3142(g). "For pretrial detention to be imposed on a defendant, the lack of reasonable assurance of either the defendant's appearance or the safety of others or the community, is sufficient; both are not required." Stewart, 19 F. App'x at 48. When considering a defendant's flight risk, the government must show by a preponderance of the evidence that no condition or combination of conditions will reasonably assure the defendant's presence at trial. Id. When considering the danger to the community or an individual, the government must show by clear and convincing evidence that no condition or combination of conditions will assure the safety of others. Id.

9. The court finds that the Government has carried its burden.

10. Factor one of 18 U.S.C. § 3142(g), the nature and circumstances of the offense charged, weighs in favor of detention. The offenses charged in the Indictment are serious in nature and indicative of danger to the safety of others and the community. Defendant is charged

8

with drug conspiracy, maintaining drug involved premises, assaulting individuals executing a search warrant, and possession, use, and carrying a firearm in furtherance of, during, and in relation to a drug trafficking crime and a crime of violence.  (See ECF No. 45.)  The seriousness of these charges is evidenced by the fact that if convicted Defendant faces a possible lengthy term of imprisonment.  In consideration of the foregoing, the court finds that the nature and seriousness of the offenses charged weigh in favor of detaining Defendant.

11.     Factor two, the weight of the evidence against Defendant, also favors detention.  The Government presented Hidalgo's testimony, which testimony connected Defendant to the criminal conduct alleged in the Indictment.  Specifically, Hidalgo's testimony tied Plaintiff to trafficking PCP with Adrian Banks and others and with firing a gun at law enforcement agents attempting to execute a search warrant.  In light of Hidalgo's testimony, the court finds that the weight of the evidence against Defendant weighs in favor of his detention.

12.     Defendant attacks the weight of the Government's evidence and calls attention to several alleged weaknesses in the Government's case against him.

   a.     First, through his own statement to police and witness testimony at the December 18, 2014 hearing, Defendant asserts that he would not have fired upon DEA agents had he known they were members of law enforcement.  Defendant attempts to focus the court's attention on what he contends was his reasonable belief that DEA agents were not members of law enforcement when he fired upon them, and that his reasonable belief entitles him to immunity from the criminal charges pending against him under the Castle Doctrine.  The Castle Doctrine, which recognizes that a person's home is his castle, is codified in South Carolina at S.C. Code Ann. §§ 16-11-410 to -450 (2006).  As it relates to Defendant's contentions, S.C. Code Ann. § 16-11-440 (2006) provides the

9

following:

> (A) A person is presumed to have a reasonable fear of imminent peril of death or great bodily injury to himself or another person when using deadly force that is intended or likely to cause death or great bodily injury to another person if the person:
>
> (1) against whom the deadly force is used is in the process of <u>unlawfully</u> and forcefully entering, or has <u>unlawfully</u> and forcibly entered a dwelling, residence, or occupied vehicle, or if he removes or is attempting to remove another person against his will from the dwelling, residence, or occupied vehicle; <u>AND</u>
>
> (2) who uses deadly force knows or has reason to believe that an unlawful and forcible entry or unlawful and forcible act is occurring or has occurred. (Emphasis added).

<u>Id.</u>  Even if Defendant meets the second prong in that he reasonably did not know that the intruders were law enforcement, there is no contention that DEA agents were unlawfully on Defendant's premises as is required for the first prong.  Although Defendant argues that the tactics used during the execution of the search warrant were unwise, Defendant does not dispute that the tactics were lawful.  Therefore, the court finds that the Castle Doctrine does not shift the weight of the evidence factor in favor of bond.

      b.      Second, Defendant argues that the Government's only witness as to his involvement in the alleged drug trafficking crimes is Adrian Banks and the Government is unable to connect Defendant to any alleged crimes occurring in the Northern District of Georgia.  However, the Indictment, which is based on probable cause and unchallenged by Defendant, also refers to Defendant's involvement in a conspiracy with other persons based on various activities related to the manufacture and possession with intent to distribute PCP, possession of PCC with the intent to manufacture PCP, possessing Piperidine knowing it to be used to manufacture PCP, storing and transporting such chemicals and profiting therefrom, and further that such activities also occurred in the

10

District of South Carolina.  Because the court is unwilling to be drawn into an assessment of the merits of the Government's case, Defendant's attack asserting that this is a "one witness case" does not shift the weight of the evidence factor in favor of bond.

13.     Factor three, the history and character of the defendant, falls in Defendant's favor. Defendant is thirty-two years old and has lived in Orangeburg County for most of his life. Defendant has no criminal history and has steady employment working for his mother at the auto body shop she owns in Orangeburg County.  All of Defendant's witnesses testified that they did not have any knowledge of him ever being violent or selling drugs.  In addition, Defendant has an active role in his children's lives, which includes taking care of them multiple times a week, and Defendant's witnesses stated that he would not leave his children to flee from the charges against him.  Further, Defendant's witnesses stated that he desires to go to trial to fight the charges against him, and thus is not a flight risk.  Accordingly, the court finds that Defendant's history and characteristics weigh against detention.

14.     The final factor, the danger to the community or an individual if Defendant is released, also weighs in favor of detention.  Although Defendant does not have a criminal history and he legally possessed all his weapons, his actions in the events leading up to his Indictment for assaulting individuals executing a search warrant are particularly probative of the extent to which he may pose a danger to others and the community.  There is evidence before the court that Defendant is always in possession of a gun and he indiscriminately fired shots into a wall without any identifiable target being present.  Moreover, during the December 18, 2014 hearing, Defendant's counsel argued that blame for Defendant's armed action should be placed on DEA for its judgment in deciding to execute the search warrant at Defendant's home at 6 a.m. Defendant's actions and argument in support of his motion for bond imply that his response to

the actions of law enforcement depends on the manner in which law enforcement agents choose to conduct their duty even when using lawful means. It is not the court's province to judge the lawful actions of law enforcement or the legal manner in which they execute any type of warrant. In this regard, the court finds that Defendant's attraction to guns even as a legal right, under these circumstances, poses a safety risk to the community. Considering the foregoing, the court finds that clear and convincing evidence supports the finding that "no condition or combination of conditions will assure the safety of others."

15. In sum, the court finds that the Government has demonstrated by "clear and convincing evidence" that "no condition or combination of conditions" will assure "the safety of any other person and the community." 18 U.S.C. § 3142(e). Accordingly, Defendant's pretrial detention is required by 18 U.S.C. § 3142(e).

### III.     CONCLUSION

Based on the foregoing Findings of Fact and Conclusions of Law, the court, upon de novo review of the evidence presented herein, **DENIES** Defendant Joel Perrin Robinson's appeal of the order of detention issued by United States Magistrate Judge Paige J. Gossett. (ECF No. 40.) Defendant shall be detained until trial.

**IT IS SO ORDERED.**

*J. Michelle Childs*

United States District Judge

December 22, 2014
Columbia, South Carolina