# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# ORANGEBURG DIVISION

| | | |
|---|---|---|
| United States of America | ) | |
| | ) | Criminal Action No. 5:14-cr-00809-JMC |
| | ) | |
| v. | ) | **ORDER AND OPINION** |
| | ) | |
| Joel Perrin Robinson | ) | |
| | ) | |
| _____ | ) | |

This matter is before the court on Defendant Joel Perrin Robinson's ("Defendant") Motion for Reconsideration of Order and Opinion Denying Defendant's Appeal of Detention Order. (ECF No. 95.) Defendant requests that the court reconsider and withdraw its Order and Opinion ("Order") (ECF No. 83) denying Defendant's appeal of United States Magistrate Judge Paige J. Gossett's Detention Order (ECF No. 18) entered on October 28, 2014. For the reasons set forth herein, the court **DENIES** Defendant's Motion for Reconsideration (ECF No. 95).

## I. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

After a hearing on October 27, 2014, the Magistrate Judge issued an order to detain Defendant pending trial. (ECF No. 18.) Defendant filed a Motion for Review and Appeal of Detention Order on November 11, 2014. (ECF No. 40.) The court granted Defendant's Motion for Review and heard argument from Defendant and the Government at a hearing on December 18, 2014. (*See* ECF Nos. 79, 80.) Upon *de novo* review of all the evidence and upon consideration of the parties' arguments, the court denied Defendant's appeal of the detention order in the Order filed on December 23, 2014. (ECF No. 83.) Defendant filed this Motion for Reconsideration on January 8, 2015. (ECF No. 95.)

## II. LEGAL STANDARD AND ANALYSIS

The Federal Rules of Criminal Procedure have no provisions governing motions for

1

reconsideration. However, the rules and federal case law do recognize such motions can be proper in a criminal setting. *See,* Fed. R. Crim. P. 57(b) ("A judge may regulate practice in any manner consistent with federal law, these rules, and the local rules of the district."); *United States v. Dieter,* 429 U.S. 6, 8 (1979) ("The fact that appeals are now routed to the courts of appeals does not affect the wisdom of giving district courts the opportunity promptly to correct their own alleged errors."); *United States v. Randall,* 666 F.3d 1238, 1241 (10th Cir. 2011) ("Although the Federal Rules of Criminal Procedure do not authorize a motion for reconsideration, 'motions to reconsider in criminal prosecutions are proper.'" (citing *United States v. Rollins,* 607 F.3d 500, 502 (7th Cir. 2010)).) The court then looks to the Federal Rules of Civil Procedure for guidance. A court may alter or amend a judgment pursuant to Rule 59(e) of the Federal Rules of Civil Procedure if the movant shows (1) an intervening change in the controlling law; (2) new evidence that was not previously available; or (3) that there has been a clear error of law or a manifest injustice. *Robinson v. Wix Filtration Corp.*, 599 F.3d 403, 407 (4th Cir. 2010). However, Rule 59(e) motions cannot be used as opportunities to rehash issues already ruled upon because the litigant is displeased with the result. *See Hutchinson v. Staton,* 994 F.2d 1076, 1082 (4th Cir. 1993) ("[M]ere disagreement does not support a Rule 59(e) motion."); *Consulting Eng'rs, Inc. v. Geometric Software Solutions & Structure Works L.L.C.,* 2007 WL 2021901 (E.D. Va. July 6, 2007) ("A party's mere disagreement with the court's ruling does not warrant a Rule 59(e) motion, and such motion should not be used to 'rehash' arguments previously presented or to submit evidence which should have been previously submitted.")

Defendant makes no argument that there has been an intervening change in controlling law, nor that there is any new evidence that was not available to the court at the time of the detention appeal hearing. Defendant makes a four-part argument seeming to fall under the third

2

factor (clear error of law or a manifest injustice) of Rule 59(e): (1) the court misapplied case law, statutory law, and common law in regard to Defendant's mental state when considering Defendant's Castle Doctrine defense, (2) the court "misapprehended its statutory obligation to weigh the strength of the Government's case beyond the existence of an indictment," (3) the court "penalized" Defendant for exercising his Second Amendment rights, and (4) the court "credited these misconstructions as clear and convincing evidence." (ECF No. 95 at 4-5.)

Defendant first asserts that the court misapplied case law as it pertains to his Castle Doctrine defense, arguing "[s]ince [Defendant] has put his lack of knowledge [as to the identity of law enforcement officers] at issue, the Court must consider whether [Defendant] raised a defense that would exculpate him of liability for shooting an *unknown* assailant invading his home." (*Id.* at 7-8 (emphasis in original).) At this stage of the proceedings, the court is charged with considering, as one of four factors under 18 U.S.C. § 3142(g), the weight of the evidence against the defendant as it pertains to his *suitability for bond*. The success of any defenses or arguments by Defendant, including the Castle Doctrine, is a determination to be made at the trial and not in the context of a detention hearing. Thus, the detailed examination of Defendant's state of mind as it relates to his knowledge of the identity of the law enforcement officers on his property, which Defendant urges the court to make at this stage, is unnecessary. The court's concern at this stage is that Defendant did not assess the situation as to whether there was a threat from any person—*law enforcement or otherwise*—or the reasonableness of his response before he decided to use lethal force.[1]

---

[1] In his statement to law enforcement on the day of the shooting, Defendant told the interviewing officers, "I woke up crazy just shooting really!" and "I just shot through, I don't know what I was shooting." (Defense Exhibit 6, Detention Hearing on Appeal from United States Magistrate Judge Order, December 18, 2014; *see* ECF No. 79, 80; *see also* ECF No. 95-1 at 14.)

Defendant further argues that the court's analysis of the Castle Doctrine as codified in S.C. Code Ann. §§ 16-11-410 to -450 (2006) should have looked beyond S.C. Code Ann. § 16-11-440(A) to consider § 16-11-440(C).  (ECF No. 95 at 9.)  Section 16-11-440(C) states: "A person who is not engaged in an unlawful activity and who is attacked *in another place* where he has a right to be, including, but not limited to, his place of business, has no duty to retreat and has the right to stand his ground and meet force with force, including deadly force, if he reasonably believes it is necessary to prevent death or great bodily injury to himself or another person or to prevent the commission of a violent crime as defined in Section 16-1-60."  (Emphasis added.)  Read together with the other subsections of § 16-11-440, the phrase "in another place" is of note.  Subsections (A) and (B) both reference "a dwelling, residence, or occupied vehicle."  Subsection (C)'s specification of "another place where he has a right to be, including, but not limited to, his place of business" would logically, then, mean all other places where a person has a right to be *other than* a "dwelling, residence, or occupied vehicle," or else this subsection would be unnecessarily repetitive.  As the incident at issue in this case occurred at Defendant's home, the court construes subsection (C) to be inapplicable.

Defendant also argues that the court did not meet its obligation under 18 U.S.C. § 3142(g) to "take into account the available information concerning… the weight of the evidence against the person" by relying in part on "the existence of a mere indictment." (ECF No. 95 at 10-11.)  The existence of the indictment was one of many factors among the evidence offered that the court considered when weighing the evidence against Defendant.  As the court noted in its Order, other evidence was considered, including testimony from Drug Enforcement Administration Special Agent Frank Hidalgo at the appeal hearing regarding both Defendant's alleged ties to drug trafficking and the firing of a gun at law enforcement agents executing a

4

search warrant.  (*See* ECF No. 83 at 9.)  The court also considered evidence that was offered into the record at the appeal hearing such as surveillance video, photographs, and items seized from the search warrant which included a packing slip for five metal drums of Piperidine, a chemical used in the manufacture of PCP.  As such, the court met its obligation to weigh the available information concerning the weight of the evidence against Defendant.

    Finally, Defendant argues that the court's finding that "Defendant's attraction to guns even as a legal right, under these circumstances, poses a safety risk to the community" (*Id.* at 12) penalizes Defendant for exercising his Second Amendment rights.  (ECF No. 95 at 12-13.)  The Second Amendment gives citizens the right to "keep and bear arms" but does not bestow upon citizens an unfettered right to use those arms in any way they see fit.  An individual's rights are not unlimited, they are viewed in balance of the rights of others.  It would not be a violation of an individual's Second Amendment rights to convict and punish him for using a lawfully owned weapon to unlawfully kill another person.  By the same token, it is not punishing Defendant for exercising his constitutional right to own guns to evaluate the manner in which he uses those guns when considering whether he may be a danger to the community or an individual. Although Defendant may argue that "the record is *void* of any evidence that [Defendant] was anything other than a lawful gun owner" (ECF No. 95 at 12 (emphasis in original)), the record does show that Defendant possesses a number of weapons, some of which are kept at times unlocked at his bedside, that Defendant has shown a willingness to shoot multiple times through a wall without first identifying a target, and that Defendant chose to shoot again in a different location even after no gunfire was returned in response to Defendant's first shots.  It is not "unconstitutionally prejudicial," as Defendant argues, to consider these facts when evaluating Defendant's suitability for bond in terms of his danger to others.

In this instance, law enforcement officers attempted to serve a legally valid warrant. Defendant would have this court authorize bond based on his criticism of the method and manner in which law enforcement executes its duties without consideration of Defendant's potential response in any given situation. When considering the information available, as required by 18 U.S.C. § 3142(g), the court disagrees that it misconstrued the law and sees no reason to disturb its finding that the Government has demonstrated by clear and convincing evidence that no condition or combination of conditions will assure the safety of the community or an individual if Defendant is allowed to be released on bond pending trial.

### III. CONCLUSION

Based on the aforementioned reasons, it is therefore ordered that Defendant's Motion for Reconsideration of Order and Opinion Denying Defendant's Appeal of Detention Order (ECF No. 95) is **DENIED**.

**IT IS SO ORDERED.**

*J. Michelle Childs*

United States District Judge

January 20, 2015
Columbia, South Carolina