# EXHIBIT I

<u>Athority of Federal Judges & Magistrates' to Issue "No-Knock" Warrants</u>,
26 Op. O.L.C 44 (2002)

# Opinions of the Office of Legal Counsel in Volume 26

*Contents*   *Page*

Status of Taliban Forces Under Article 4 of the Third Geneva Convention of 1949 (February 7, 2002) .......................................................................... 1

Application of 18 U.S.C. § 203 to Former Employee's Receipt of Attorney's Fees in Qui Tam Action (February 28, 2002) ......................... 10

Role of Legal Guardians or Proxies in Naturalization Proceedings (March 13, 2002) ................................................................................... 16

Centralizing Border Control Policy Under the Supervision of the Attorney General (March 20, 2002) ......................................................................... 22

Authority of the Chemical Safety and Hazard Investigation Board to Delegate Power (April 19, 2002) ............................................................... 29

Application of Conflict of Interest Rules to Appointees Who Have Not Begun Service (May 8, 2002) .................................................................. 32

Applicability of Ineligibility Clause to Appointment of Congressman Tony P. Hall (May 30, 2002) ............................................................................ 40

Authority of Federal Judges and Magistrates to Issue "No-Knock" Warrants (June 12, 2002) ........................................................................................ 44

Survey of the Law of Expatriation (June 12, 2002) ......................................... 56

Federal Reserve Board Efforts to Control Access to Buildings and Open Meetings (July 9, 2002) ........................................................................... 72

Effect of the Patriot Act on Disclosure to the President and Other Federal Officials of Grand Jury and Title III Information Relating to National Security and Foreign Affairs (July 22, 2002) ........................................... 78

Application of 44 U.S.C. § 1903 to Procurement of Printing of Government Publications (August 22, 2002) ................................................................ 104

Relationship Between Section 203(d) of the Patriot Act and the Mandatory Disclosure Provision of Section 905(a) of the Patriot Act (September 17, 2002) .................................................................................................. 107

Authority of FEMA to Provide Disaster Assistance to Seattle Hebrew Academy (September 25, 2002) ............................................................... 114

Authority of the President Under Domestic and International Law to Use Military Force Against Iraq (October 23, 2002) ...................................... 143

Effect of a Recent United Nations Security Council Resolution on the Authority of the President Under International Law to Use Military Force Against Iraq (November 8, 2002) .................................................. 199

# OPINIONS

OF THE

# OFFICE OF LEGAL COUNSEL

OF THE

UNITED STATES DEPARTMENT OF JUSTICE

CONSISTING OF SELECTED MEMORANDUM OPINIONS
ADVISING THE

# PRESIDENT OF THE UNITED STATES,

# THE ATTORNEY GENERAL,

AND OTHER EXECUTIVE OFFICERS OF
THE FEDERAL GOVERNMENT

IN RELATION TO

THEIR OFFICIAL DUTIES

---

EDITOR

Nathan A. Forrester

---

VOLUME 26

2002

WASHINGTON
2012

| | |
|---|---|
| Designation of Acting Solicitor of Labor (November 15, 2002) | 211 |
| Expiration of Authority of Recess Appointees (November 22, 2002) | 216 |
| Whether False Statements or Omissions in Iraq's Weapons of Mass Destruction Declaration Would Constitute a "Further Material Breach" Under U.N. Security Council Resolution 1441 (December 7, 2002) | 217 |
| Duty to File Public Financial Disclosure Report (December 19, 2002) | 225 |
| Under Secretary of the Treasury for Enforcement (December 19, 2002) | 230 |
| Legality of Fixed-Price Intergovernmental Agreements for Detention Services (December 31, 2002) | 235 |

# Authority of Federal Judges and Magistrates to Issue "No-Knock" Warrants

Federal judges and magistrates may lawfully and constitutionally issue "no-knock" warrants where circumstances justify a no-knock entry, and federal law enforcement officers may lawfully apply for such warrants under such circumstances.

Although officers need not take affirmative steps to make an independent re-verification of the circumstances already recognized by a magistrate in issuing a no-knock warrant, such a warrant does not entitle officers to disregard reliable information clearly negating the existence of exigent circumstances when they actually receive such information before execution of the warrant.

June 12, 2002

MEMORANDUM OPINION FOR THE CHIEF COUNSEL
DRUG ENFORCEMENT ADMINISTRATION

This responds to your memorandum seeking this Office's opinion whether federal judges and magistrate judges have legal authority to issue so-called "no-knock" warrants.[1] In addition to considering the information and analysis contained in your memorandum, we have also solicited and received the views of the Department's Criminal Division, which has both interest and experience in this area.[2]

After giving full consideration to these submissions, and having reviewed the pertinent statutes and case law, we conclude that federal district court judges and magistrates may lawfully and constitutionally issue no-knock warrants—i.e., warrants authorizing officers to enter certain premises to execute a warrant without first knocking or otherwise announcing their presence where circumstances (such as a known risk of serious harm to the officers or the likelihood that evidence of crime will be destroyed) justify such an entry. It follows that federal law enforcement officers may lawfully apply for such warrants based on information showing such circumstances to be present. We further conclude that the issuance of a no-knock warrant by a neutral magistrate, while not conclusive on the issue, will generally reinforce the admissibility of evidence obtained through no-knock entries executed pursuant to such warrants under *Leon*'s good-faith exception to the exclusionary rule[3] and by fortifying the objective reasonableness of the police conduct. Even when authorized by such a no-knock warrant, however, a no-knock

---

[1] *See* Memorandum for M. Edward Whelan III, Acting Assistant Attorney General, Office of Legal Counsel, from Cynthia R. Ryan, Chief Counsel, Drug Enforcement Administration, *Re: Authority of Federal Judges to Issue "No-Knock" Warrants* (Oct. 26, 2001) ("DEA Memorandum").

[2] *See* Memorandum for M. Edward Whelan III, Acting Assistant Attorney General, Office of Legal Counsel, from Patty Stemler, Chief, Appellate Section, Criminal Division (Dec. 11, 2001) ("CRM Memorandum").

[3] *See United States v. Leon*, 468 U.S. 897 (1984).

entry might nonetheless violate the Fourth Amendment if the officers have actual knowledge that the circumstances that justified the no-knock authorization no longer exist at the time the warrant is executed.

## I.

Your inquiry notes that it is the present practice of some United States Attorneys' offices to seek "no-knock" search warrants and recognizes that some federal magistrate judges issue such warrants. DEA Memorandum, *supra* note 1, at 2. Your memorandum also states that components of the Criminal Division have advised federal prosecutors that it is appropriate to seek no-knock warrants when the facts supporting a no-knock entry are known to exist at the time the warrant is sought. *Id*.; *see also* CRM Memorandum, *supra* note 2, at 1 (stating that the Criminal Division "recommends that we continue to seek such warrants on appropriate facts"). You also note that various States have enacted statutes that explicitly authorize judges to issue no-knock warrants, whereas a previous federal statutory authorization for the issuance of such warrants in controlled substances cases was repealed in 1974.

You advise that DEA has assisted state and local police in the execution of state no-knock warrants and that DEA has been requested by a United States Attorney's office to participate in the execution of a number of federal no-knock warrants. You further explain, however, that current DEA policy, as reflected in section 6653.2.C of the DEA Agents Manual, is based on the contrary premise that "Federal law does not allow for the issuance of a 'no-knock' warrant." DEA Memorandum at 3. Your memorandum therefore expresses concern regarding the legal accuracy of DEA's current policy. You have requested that we address that concern in this opinion.

In response to our request for its views, the Criminal Division has submitted a memorandum supporting the legality and constitutionality of no-knock warrants and recommending "that we continue to seek such warrants on appropriate facts." CRM Memorandum at 1. In the Division's view, the issue presented here "ultimately turns on the following question: Can an issuing magistrate sanction a constitutional manner of executing a warrant in the absence of a statute or rule that gives him authority to address the question?" *Id*. at 5. The Division answers that question in the affirmative, and further endorses the view expressed by the Eighth Circuit in *United States v. Moore*, 956 F.2d 843, 849 n.8 (8th Cir. 1992), that "the fact that a no-knock entry has been authorized by a neutral magistrate in a warrant required by statute can hardly be irrelevant to the reasonableness of that entry under the Fourth Amendment."

## II.

### A.

As recognized in your memorandum, the Fourth Amendment imposes restrictions on the authority of federal law enforcement officers to enter a residence even when they have a valid search warrant based upon probable cause. As the Fourth Amendment states:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. In applying the Fourth Amendment, the Supreme Court has held that, even when they are conducting a search lawfully authorized by a warrant, officers must generally knock and announce their identity and purpose before entering a private residence to execute the warrant. *See Wilson v. Arkansas*, 514 U.S. 927 (1995). The Court has stressed, however, that this general principle "was never stated as an inflexible rule requiring announcement under all circumstances." *Id*. at 934. On the contrary, there are well-established exceptions to the "knock-and-announce" requirement, primarily in situations where exigent circumstances make it necessary for officers to enter the premises without prior announcement for reasons of physical safety or in order to prevent the imminent destruction of evidence or contraband. *See id*. at 936.

Apart from the Constitution, 18 U.S.C. § 3109 (2000) also addresses certain aspects of the execution of search warrants by federal officers. That section provides as follows: "The officer may *break open* any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant." *Id*. (emphasis added).[4] The Supreme Court has made it clear, however, that the requirements and restrictions of 18 U.S.C. § 3109 are subject to the same well-recognized exceptions that apply under the Fourth Amendment. *See United States v. Ramirez*, 523 U.S. 65 (1998) (holding that section 3109 "includes an

---

[4] Another statute regulating the execution of warrants is 21 U.S.C. § 879 (2000), which provides: "A search warrant relating to offenses involving controlled substances may be served at any time of the day or night if the judge or United States magistrate judge issuing the warrant is satisfied that there is probable cause to believe that grounds exist for the warrant and for its service at such time." This statute plainly does not prohibit the issuance of no-knock warrants, but merely provides specific authorization for judges and magistrates to issue warrants that may be executed at any time of day or night.

exigent circumstances exception" and that the constitutional standard and section 3109's standard are the same). The Court's decision in *Ramirez* also emphasized that, by its own terms, 18 U.S.C. § 3109 prohibits nothing. It is an authorizing statute, not one of prohibition. *See* 523 U.S. at 72.

The general authority for the issuance of search warrants by federal magistrates and federal district judges is found in Rule 41 of the Federal Rules of Criminal Procedure.[5] Rule 41 does not address whether, or to what extent, officers must knock or otherwise announce their presence and purpose before executing a warrant authorized by the rule. *See* Fed. R. Crim. P. 41.

Finally, another pertinent factor giving rise to this inquiry is the above-referenced provision in the DEA Agents Manual, which includes the following statements:

> Federal law does not contain a provision for a "no knock" warrant. Although some states still issue "no knock" warrants, DEA Agents need to recognize that such warrants are actually no different than a normal warrant with respect to the duty to knock and announce. The duty to knock and announce before entering a residence is a matter of Federal constitutional law, and the duty can be excused only by showing that exigent circumstances actually existed at the time of the search. DEA Agents must not under any circumstances participate in a search warrant execution that fails to comply with the knock and announce requirement unless they are aware of specific facts that demonstrate that their safety will be compromised or evidence will likely be destroyed if they do not effect an immediate, unannounced entry to the residence.

DEA Agents Manual § 6653.2.C. This language suggests that DEA agents have an independent responsibility to evaluate the circumstances existing at the time of

---

[5] Rule 41(a) provides in relevant part:

(a) Authority to Issue Warrant. Upon the request of a federal law enforcement officer or an attorney for the government, a search warrant authorized by this rule may be issued (1) by a federal magistrate judge, or a state court of record within the federal district, for a search of property or for a person within the district and (2) by a federal magistrate judge for a search of property or for a person either within or outside the district if the property or person is within the district when the warrant is sought but might move outside the district before the warrant is executed and (3) in an investigation of domestic terrorism or international terrorism (as defined in section 2331 of title 18, United States Code), by a Federal magistrate judge in any district in which activities related to the terrorism may have occurred, for a search of property or for a person within or outside the district.

Fed. R. Crim. P. 41(a). Although Rule 41(a)'s authorization refers only to "federal magistrate judge[s]," courts have "uniformly assumed" that the authorization extends to U.S. District Judges as well. *See United States v. Torres*, 751 F.2d 875, 878 (7th Cir. 1984).

execution of *every* warrant to determine whether any emergency exists to justify entry without knocking. They may not, in other words, simply rely on the issuance of a no-knock warrant itself, according to the guidance of the Agents Manual.

### B.

We first address whether it is constitutionally permissible for courts or magistrates to issue no-knock warrants.

The Supreme Court first addressed no-knock warrants in *Richards v. Wisconsin*, 520 U.S. 385 (1997). There, the Court addressed the legality of a search conducted pursuant to a warrant (not a no-knock warrant) where the officers executing the warrant determined that the situation required a no-knock entry. The Court held that the Fourth Amendment does not permit a "blanket exception" to the knock-and-announce requirement in the case of all warrants executed in felony drug investigations. At the same time, the Court upheld the constitutionality of the particular no-knock entry at issue. More importantly for present purposes, the Court in dicta specifically expressed its approval of state court magistrates issuing no-knock warrants when they are authorized to do so under state law. As the Court explained:

> A number of States give magistrate judges the authority to issue "no-knock" warrants if the officers demonstrate ahead of time a reasonable suspicion that entry without prior announcement will be appropriate in a particular context. *The practice of allowing magistrates to issue no-knock warrants seems entirely reasonable when sufficient cause to do so can be demonstrated ahead of time*. But, as the facts of this case demonstrate, a magistrate's decision not to authorize a no-knock entry should not be interpreted to remove the officers' authority to exercise independent judgment concerning the wisdom of a no-knock entry at the time the warrant is being executed.

*Id* at 396 n.7 (emphasis added). In holding that the magistrate's refusal to include "no-knock" authorization in the warrant did not itself render the officers' subsequent no-knock entry constitutionally unreasonable, the *Richards* Court emphasized that, for Fourth Amendment purposes, "the reasonableness of the officers' decision . . . must be evaluated as of the time they entered" the premises to be searched, *id*. at 395.

Following *Richards*, there is extensive federal case authority supporting the constitutionality of the issuance and use of no-knock warrants. In *United States v. Ramirez*, for example, the Supreme Court upheld the execution of a no-knock warrant obtained by *federal officers* against claims that the executing officers had violated both the Fourth Amendment and federal statutory restrictions. 523 U.S.

at 65. In so holding, the Court gave no suggestion that the issuance and use of the no-knock warrant was inappropriate or invalid. Numerous other federal cases have expressly cited and relied upon the above-quoted statement from *Richards v. Wisconsin* in upholding the constitutionality and legality of searches conducted pursuant to no-knock warrants. *See, e.g.*, *United States v. Tisdale*, 195 F.3d 70, 72 (2d Cir. 1999) ("*Richards* approved the issuance of no-knock warrants.");[6] *United States v. Spry*, 190 F.3d 829, 833 (7th Cir. 1999) (upholding search conducted pursuant to no-knock warrant), *cert. denied*, 528 U.S. 1130 (2000); *United States v. Mattison*, 153 F.3d 406, 409 n.1 (7th Cir. 1998) ("A 'no-knock' search warrant allows the police to enter the residence without knocking and announcing their presence and purpose before entering the residence."); *United States v. Winters*, No. 2:00-CR-590C, 2001 WL 670924 (D. Utah May 9, 2001) (issuance of a no-knock search warrant did not violate the Fourth Amendment); *United States v. Penman*, No. 2:00-CR-192C, 2001 WL 670922 (D. Utah May 3, 2001) (same); *United States v. Mack*, 117 F. Supp. 2d 935 (W.D. Mo. 2000) (upholding the validity of a search performed pursuant to a Missouri no-knock warrant based upon an affidavit establishing exigent circumstances for the search; the court also specifically held that the no-knock provision of the search warrant was constitutionally supported by reasonable suspicion).[7]

In light of the clear authority in *Richards v. Wisconsin* and ensuing cases, we conclude that nothing in the Fourth Amendment prohibits federal magistrates from issuing, and law enforcement officers from seeking, a no-knock warrant when there are reasonable grounds to believe that circumstances justifying no-knock entry will exist at the time the warrant is to be executed.

### C.

Although *Richards* and ensuing cases confirm that the Fourth Amendment places no constitutional prohibition on no-knock warrants as a general proposition, they do not specifically address whether federal courts are authorized or permitted to issue such warrants under the powers assigned to them by federal law. The precedents discussed above generally involve warrants issued by state courts or

---

[6] In *Tisdale*, the court also held that, even assuming that the exigent circumstances required for a no-knock search warrant were *not* present, the police officers' reliance on the no-knock provision of the warrant was not objectively unreasonable, thus precluding suppression of the evidence seized during the no-knock search. *See* 195 F.3d at 71.

[7] Other federal court decisions recognized the constitutionality of no-knock warrants prior to the *Richards* opinion. *See, e.g.*, *United States v. Singer*, 943 F.2d 758, 759 & n.1 (7th Cir. 1991) (no-knock warrants held permitted under Wisconsin law because no statute specifically prohibited them).

magistrates,[8] and do not address whether, or to what extent, federal statutes authorize or permit the issuance of no-knock warrants by federal magistrates.

*1. 18 U.S.C. § 3109*. We first consider whether 18 U.S.C. § 3109's provisions authorizing officers to "break open any outer or inner door or window of a house" in executing warrants under certain defined circumstances should be construed to prohibit (by negative implication) the issuance or use of federal no-knock warrants in circumstances not encompassed by section 3109. Section 3109 expressly limits its door-and-window-breaking authorization to circumstances where either (a) the officers have been refused admittance after announcing their authority and purpose; or (b) forcible entry is necessary to "liberate" the officers or those assisting them in the execution of the warrant. We do not believe this statute's particularized *authorization* for officers to break open doors and windows is properly construed as a prohibition against warrants authorizing no-knock entries. As the Supreme Court emphasized in *United States v. Ramirez*, section 3109 "by its terms prohibits nothing. It merely authorizes officers to damage property in certain instances." 523 U.S. at 72.[9] As further held in *Ramirez*, moreover, to the extent that section 3109 might be construed to include an implied prohibition or restriction, it should also be construed as subject to the same "exigent circumstance" exceptions applicable with respect to Fourth Amendment restrictions. *Id*. at 73. *See also United States v. Tisdale*, 195 F.3d at 73 (standards governing section 3109 and constitutional Fourth Amendment standards are the same). It follows that since the Fourth Amendment does not bar the issuance and use of no-knock warrants where exigent circumstances (defined under the standard adopted in *Richards*, *see* 520 U.S. at 394) are established, neither does 18 U.S.C. § 3109.

*2. 21 U.S.C. § 879*. Both DEA's and the Criminal Division's submissions note that an earlier version of the "24-hour drug search" statute, 21 U.S.C. § 879, had expressly authorized the issuance and use of warrants authorizing officers to break open doors and outer windows without prior announcement of authority or purpose in certain searches for illegal drugs. *See* Comprehensive Drug Abuse Prevention and Control Act of 1970, Pub. L. No. 91-513, § 509, 84 Stat. 1236, 1274, previously codified at 21 U.S.C. § 879(b) (1970). However, subsection (b) of the earlier statute, the portion that expressly authorized issuance of no-knock warrants and door-breaking authority under enumerated circumstances, was repealed in 1974 by a Senate amendment to an appropriations bill. *See* Pub. L. No.

---

[8] In *United States v. Ramirez*, neither the Supreme Court's opinion nor that of the Ninth Circuit specifies whether the warrant issued to the Deputy U.S. Marshal was issued by a federal or state court.

[9] The Seventh Circuit made a similar point in *United States v. Torres*, 751 F.2d 875 (7th Cir. 1984). In upholding a federal district court's power to issue a warrant authorizing television surveillance of terrorist "safehouses" despite the lack of explicit statutory authority to do so, the court observed: "It does not follow, however, that because Title III does not authorize warrants for television surveillance, it forbids them. The motto of the Prussian state—that everything which is not permitted is forbidden—is not a helpful guide to statutory interpretation." *Id*. at 880.

93-481, § 3, 88 Stat. 1455 (1974). As pointed out in the DEA Memorandum, there is some indication in the legislative history of this repeal provision that at least its Senate sponsor intended the repeal to prohibit the issuance of no-knock warrants. *See* 120 Cong. Rec. 19,910, 19,911 (1974) (remarks of Sen. Ervin).[10]

   This raises the question whether congressional removal of the special authorization for the execution of certain drug-search warrants contained in former 21 U.S.C. § 879(b) (1970) should be equated with a general *prohibition* against no-knock warrants. We reject such an interpretation. Former section 879(b) was a narrow and carefully framed authorization respecting the execution of search warrants, limited to offenses involving controlled substances, that included authority to break open doors and windows under certain described circumstances. Like 18 U.S.C. § 3109, as recognized by the Supreme Court in *Ramirez*, section 879(b) was an authorizing statute that by its terms "prohibit[ed] nothing." 523 U.S. at 72. Given that fact, and particularly in light of the specialized and restricted nature of that statutory provision, we do not conclude that its repeal can be equated with, or construed as, a general statutory prohibition on no-knock search warrants. *Cf. United States v. Torres*, 751 F.2d at 880.

   The actual issue, instead, is whether an express statutory authorization is even required for federal magistrates to include constitutionally permitted "no-knock" provisions in search warrants they are otherwise authorized to issue.

   Existing judicial authority does not appear to specifically address this point. In *United States v. Ramirez*, for example, the Supreme Court upheld the execution of a no-knock warrant that was "sought and received" by a Deputy United States Marshal, *see* 523 U.S. at 68, but did not address the question of federal statutory authority for a court to issue such a no-knock warrant. In *United States v. Singer*, 943 F.2d 758 (7th Cir. 1991), the court upheld the issuance and execution of a no-knock warrant issued by a state court. Although the court applied federal law because the case was a federal prosecution, it suggested that no-knock warrants were permitted under Wisconsin law because no statute prohibited them. *Id*. at 759 & n.1 ("while the language of the [Wisconsin] statute does not specifically authorize no-knock warrants, it does not prohibit them either"). There would seem to be no apparent reason why a different rule of statutory construction would apply with regard to federal law. Similarly, in *United States v. Mack*, 117 F. Supp. 2d 935, 941 (W.D. Mo. 2000), the court acknowledged that there was no Missouri statute expressly authorizing no-knock search warrants. Nonetheless, the court proceeded to uphold the validity of the no-knock provisions of a search warrant issued by a Missouri judge on the grounds that it was fully compliant with

---

[10] The House Conference Report on the legislation also stated that it would "repeal the authority of a judge or magistrate to issue a search warrant (relating to offenses involving controlled substances) which authorizes, under certain circumstances, an officer to break and enter a building in the execution of the search warrant without giving notice of his authority and purpose." H.R. Rep. No. 93-1442, at 4 (1974) (Conf. Rep.), *reprinted in* 1974 U.S.C.C.A.N. 5974, 5976.

Missouri law and federal constitutional requirements. *Id*. at 942-43. As the Criminal Division points out, however, state courts are divided on the issue of whether judges or magistrates may issue no-knock warrants without explicit statutory authority.[11]

Although we find no federal opinions resolving this precise issue, we conclude that a federal judge's or magistrate's general authority to issue warrants under Rule 41 of the Federal Rules of Criminal Procedure is sufficiently flexible to encompass no-knock authorizations. Indeed, there is substantial support in existing case law for such an understanding of the flexible authority provided by Rule 41.

In *United States v. New York Telephone Company*, 434 U.S. 159 (1977), the Supreme Court held that a federal district court had the power to authorize the installation of pen registers (used to record the numbers dialed on a telephone without overhearing conversations) even though neither Rule 41(b) nor Title III of the Omnibus Crime Control and Safe Streets Act of 1968 specifically authorized such measures. After reciting Rule 41(b)'s express (but limited) authorizations for the search and seizure of property and contraband, the Court explained:

> This authorization is broad enough to encompass a "search" designed to ascertain the use which is being made of a telephone suspected of being employed as a means of facilitating a criminal venture and the "seizure" of evidence which the "search" of the telephone produces. Although Rule 41(h) defines property "to include documents, books, papers and any other tangible objects," it does not restrict or purport to exhaustively enumerate all the items which may be seized pursuant to Rule 41. Indeed, we recognized in *Katz v. United States*, which held that telephone conversations were protected by the Fourth Amendment, that Rule 41 is not limited to tangible items but is sufficiently flexible to include within its scope electronic intrusions authorized upon a finding of probable cause.
>
> Our conclusion that Rule 41 authorizes the use of pen registers under appropriate circumstances is supported by Fed. Rule Crim. Proc. 57(b), which provides: "If no procedure is specifically prescribed by rule, the court may proceed in any lawful manner not inconsistent with these rules or with any applicable statute."

434 U.S. at 169-70 (citations and footnotes omitted).[12]

---

[11] *Compare State v. Cleveland*, 348 N.W.2d 512, 518-19 (Wis. 1984) (no-knock warrants may be issued without express statutory authority), *with State v. Bamber*, 630 So. 2d 1048, 1050-51 (Fla. 1994) (no-knock warrants must be expressly authorized).

[12] Rule 57(b), as invoked by the Court in *New York Telephone* in support of a federal court's power to authorize procedures (such as the use of pen registers) not expressly authorized by the applicable

A similarly flexible construction of the scope of judicial authority to issue special warrant provisions was adopted by the Seventh Circuit (per Judge Posner) in *United States v. Torres*. In *Torres*, the court held that a federal district court had authority to issue a warrant authorizing television surveillance of terrorist "safehouses" despite the absence of express statutory authority for that procedure in Rule 41 or federal statutes such as Title III. Noting that Congress's overhaul of the federal criminal code in 1948 left the matter of search warrants "to be governed by rule of court," the Seventh Circuit stated: "This broad delegation suggests that Congress views the issuance of federal search warrants as standing on a plane with other procedural powers that courts traditionally have exercised without explicit legislative direction." 751 F.2d at 879. Although the court cautioned that it "shall not pretend greater certainty than we feel" on the issue, the court concluded that federal courts may issue warrants for television surveillance and other "new types of search" without express statutory authorization. *Id*.

Although the issue is not entirely free from doubt, we believe the foregoing holdings and principles support the view that express statutory authority is not required for federal magistrates to issue search warrants authorizing no-knock entries when the government makes an adequate showing of exigent circumstances.

### D.

Finally, we consider an additional question suggested by your inquiry and by the provisions of the DEA Agents Manual—namely, to what degree, if any, does the issuance of a no-knock warrant relieve officers of the necessity of determining whether the circumstances that justified inclusion of the no-knock provision still exist at the time of actual execution? As noted above, the DEA Agents Manual essentially takes the view that the issuance of no-knock warrants has no effect on an officer's obligation to knock and announce before execution of a warrant unless the officer independently determines that circumstances existing at the time of execution satisfy constitutional prerequisites for an unannounced entry.

In *United States v. Singer*, 943 F.2d 758 (7th Cir. 1991), where the court upheld a no-knock entry undertaken pursuant to a state no-knock warrant, the court framed and addressed this issue as follows:

> Singer maintains that the officers' execution of the warrant was unconstitutional because the police officers were aware of facts sug-

---

rule, has been slightly amended since that decision and now provides: "A judge may regulate practice in any manner consistent with federal law, these rules, and local rules of the district." Fed. R. Crim. P. 57(b). Rule 57(b) provides further support for federal no-knock warrant authority in that such authority appears to be "consistent with federal law"—i.e., consistent with the numerous federal court opinions upholding the constitutionality of no-knock warrants.

> gesting that no exigent circumstances existed to justify their unannounced entry. To support this argument, he makes much of what the officers did not encounter when they arrived at his home to conduct the search. . . . As our previous discussion concluded, the officers' no-knock entry was permissible because Singer's possession of firearms posed a threat to the safety of the officers. *If, during the intervening period between the warrant's issuance and execution, the police received reliable information that Singer no longer possessed any firearms, then they would have been required to reevaluate their plan to forcibly enter Singer's home without first knocking and announcing.*

*Id*. at 763 (emphasis added).[13]

Although the *Singer* opinion indicates that the force of a no-knock warrant may be undercut by the police's actual receipt of reliable information negating the existence of exigent circumstances, it does not follow that officers in possession of such warrants must necessarily and invariably undertake an independent reinvestigation of those circumstances prior to execution of the warrant. Thus, in *United States v. Spry*, the Seventh Circuit held that "the district court correctly determined that *the law does not require officers, after obtaining a no-knock warrant, to make an independent determination of the exigent circumstances at the time of entry.*" 190 F.3d at 833 (emphasis added). Other cases emphasize that officers are generally entitled to rely on the validity of a warrant authorizing no-knock entry, including its underlying finding that exigent circumstances exist. *See United States v. Hawkins*, 139 F.3d 29, 32 (1st Cir. 1998) ("The matter was submitted to the judgment of a judicial officer who passed upon facts submitted, the existence of which has not been questioned. Under these circumstances the executing officers were clearly entitled to rely on the validity of the warrant.") (citing *United States v. Leon*, 468 U.S. 897 (1984); *United States v. Mack*, 117 F. Supp. 2d 935, 942 (W.D. Mo. 2000) (observing that "[t]he issuance of a no-knock search warrant potentially insulates the police against a subsequent finding that exigent circumstances, as defined by *Richards*, did not exist"); *United States v. Rivera*, No. CRIM. 00-6-B-C, 2000 WL 761976 (D. Me. May 15, 2000) ("The

---

[13] *See also State v. Cleveland*, 348 N.W.2d at 519, where the court stated:

> But such prior authorization is in effect conditional; a magistrate cannot absolutely authorize no-knock entry. A search warrant may be executed within five days after issuance. Circumstances which justify noncompliance with the rule of announcement when the warrant was obtained might change after the judge's evaluation and before the officer's entry. If the warrant authorizes a no-knock entry, officers may forego announcement unless between the time of the issuance of the warrant and its execution new information has come to the officers' attention that would obviate the need to enter without complying with the rule of announcement.

First Circuit has held that when a judicial officer issues a no-knock warrant, *Leon* is applicable. *See United States v Hawkins*, 139 F.3d 29, 32 (1st Cir. 1998). Specifically, the Court will not exclude evidence discovered pursuant to a no-knock warrant if the executing officers are objectively reasonable in their reliance on such a warrant, even if the judicial officer should have required a more particularized showing of exigent circumstances.").

Although it might be argued that there is some tension between the above-quoted holdings in *Singer* (a no-knock warrant's authority can be vitiated by the officers' intervening receipt of reliable information that the factual basis for exigent circumstances no longer exists) and *Spry* (officers are not obligated to make an independent determination of exigent circumstances when they execute a no-knock warrant), we think the decisions are easily reconcilable and that the distinctions drawn by the cases are reasonably clear. Although officers need not take affirmative steps to make an independent re-verification of the circumstances already recognized by a magistrate in issuing a no-knock warrant, such a warrant does not entitle officers to disregard reliable information clearly negating the existence of exigent circumstances when they actually receive such information before execution of the warrant.[14]

PATRICK F. PHILBIN
*Deputy Assistant Attorney General*
*Office of Legal Counsel*

---

[14] Our conclusion is consistent with the Supreme Court's observations in *Leon* regarding an officer's permissible reliance on a magistrate's determination of probable cause when executing a search warrant. As the Court stated: "In the ordinary case, an officer cannot be expected to question the magistrate's probable cause determination . . . . '[O]nce the warrant issues, there is literally nothing more the policeman can do in seeking to comply with the law.'" 468 U.S. at 921 (quoting *Stone v. Powell*, 428 U.S. 465, 498 (1976)). The Court added, however, that the officer's reliance on the magistrate's probable cause determination must be "objectively reasonable" for purposes of the good-faith exception to the exclusionary rule. *Id*. at 922.